IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHAUN SMEDLEY and BRIAN CLARKE,    \*
    \*
    Plaintiffs,    \*
    \*
    vs.    \*    Civil Action No. ADC-21-2453
    \*
CITRON LLC T/A CITRON    \*
BALTIMORE and CHARLES LEVINE,    \*
    \*
    \*
    Defendants.    \*
    \*
    \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs filed this Complaint alleging violations of the Maryland Wage and Hour Law (MWHL–Count I); the Maryland Wage Payment and Collection Law (MWPCL–Count II); and the Fair Labor Standards Act of 1983 (FLSA–Count III). Plaintiffs also allege common law breach of contract for failure to pay wages (Count IV). Pending are (1) the Defendants' Motion for Summary Judgment (ECF No. 37) and (2) the Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 39). Plaintiffs move for summary judgment on two issues. First, Plaintiffs argue that defendants are employers as defined by the FLSA, the MWHL, and the MWPCL. Second, they argue that Plaintiff Smedley is entitled to a partial judgment in the amount of $21,359.18. To the extent possible, the Court

has considered the Motions separately.[1] The Motions have been fully briefed and there is

no need for a hearing. *See* Loc.R. 105.6 (D.Md. 2023). As set forth below, the Court will

GRANT Defendants' Motion for Summary Judgment (ECF No. 37) in part and DENY

Defendants' Motion in part. The Court will GRANT Plaintiffs' Cross-Motion for Partial

Summary Judgment (ECF No. 39) in part and DENY Plaintiffs' Motion in part.

## FACTUAL BACKGROUND

Defendant Citron, LLC is a restaurant located in Baltimore County, Maryland, and

is owned and operated by Defendant Charles Levine. ECF Nos. 37, 39-2. Plaintiff Shaun

Smedley was a Citron employee who was hired to wait tables. He was employed there from

approximately October 2016 to July 2021. ECF No. 37. Plaintiff Smedley never executed

a written employment contract with the restaurant. ECF No. 39-9. Before beginning,

Plaintiff Smedley attended a new employee training led by Mr. Henry Pertman, a Cohen

Reznick consultant who was advising Defendant Levine on restaurant industry best

practices. ECF Nos. 37, 39-2. The parties disagree about the substance of this training,

particularly the extent to which Mr. Pertman explained the restaurant's compensation

structure for servers. Defendants contend that the training session "included a review of

the Employee Handbook and a discussion of the compensation servers would receive,

including mandatory tip pooling from server's pay for server assistants, bar sales, and credit

---

[1] On September 27, 2021, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF No. 3. This case was consolidated with *Clarke v. Citron, LLC*, et al. (Case No. 1:21-cv-03235).

card sales." ECF No. 37. The Citron Employee Handbook describes the restaurant's minimum wage requirements as follows:

> In compliance with Maryland State labor laws, Citron will start its rate of pay at the minimum wage rate for non-tipped employees. Non-food service employees shall receive a wage of at least $5.65 per hour, and credit for tips shall not exceed $2.35 per hour, provided that the total of tips received plus the wages equals or exceeds $8.00 per hour. *Food service tipped employees shall receive a wage of at least $5.00 per hour and credit for tips shall not exceed $3.00 per hour, provided that the total of tips received plus the wages equals or exceeds $8.00 per hour.*

ECF No. 39-7 (emphasis added).

The handbook describes the tip pool policy as follows:

> Citron is a pooled house and all Front of House service employees will participate in the pool. No tipped employees are exempt from the pool and no one can opt out at any time for any reason. By accepting a position as a tipped employee of Citron, you are agreeing to the tip pool policies. The pool will operate on a point system, distribution of which is subject to change at the discretion of management. The tip pool will be calculated on an hourly basis based on your Aloha chits[2]. For the restaurant opening, distribution will be determined prior to opening.

ECF No. 39-7.

At his deposition, Mr. Pertman stated that he could not remember any conversations during training sessions about the fact that tipped employees at Citron would receive less than the minimum wage, plus tips. ECF No. 39-6. Plaintiff Smedley asserts that he was "never informed of the tip pool percentages and/or distribution in accordance with the

---

[2] It appears from the record that "Aloha" was an internal system that Citron never fully implemented. *See* ECF No. 39.

3

Citron Employee Handbook." ECF No. 39-8. He further asserts that the nature and function of a "tip credit" was never explained to him.

In March 2020, Citron faced a mandatory closure due to the Covid-19 pandemic. The restaurant reopened in May 2020, and Plaintiff Smedley returned to work in September 2020. Upon reopening, Citron changed its compensation scheme for servers. ECF Nos. 37, 39. Instead of leaving server tips up to guest discretion, the restaurant began imposing a mandatory gratuity of 20% on each table. *Id.* Plaintiff Smedley eventually became unhappy with his compensation and left his employment at the restaurant in July 2021. ECF Nos. 37, 39.

Plaintiff Brian Clarke began working as a server at Citron in October 2020 and only worked at the restaurant when it imposed the mandatory gratuity. ECF Nos. 37, 39. Plaintiff Clarke also never executed a written employment contract with Citron. *Id.* In his deposition, Plaintiff Clarke stated that he had been told "really nothing" about Citron's compensation structure by management, but that he expected to be paid "that average [$]3.63 [per hour] that most restaurants in the area pay in addition to your tips." ECF No. 37-7. Plaintiff Clarke ended his employment at Citron in March 2021 over a compensation dispute. ECF No. 37.

## PROCEDURAL BACKGROUND

Plaintiff Smedley and Plaintiff Clarke filed their initial complaints on September 24, 2021, and on December 21, 2021, respectively. ECF No. 1. On August 30, 2022, this Court granted the Defendants' Motion to Consolidate the two cases for all purposes. On

February 8, 2023, following discovery[3], Defendants filed the instant Motion for Summary
Judgment. Plaintiffs filed their Response in Opposition to Defendants' Motion for
Summary Judgment and a Cross-Motion for Partial Summary Judgment on February 22,
2023.

## STANDARD OF REVIEW

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the affidavits,
if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See
Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute
between the parties will not defeat an otherwise properly supported motion for summary
judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in
original). An issue of fact is material if, under the substantive law of the case, resolution of
the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine
issue of material fact "if the evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330
(4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in
favor of the nonmoving party and "the evidence is merely colorable, or is not significantly

---

[3] Discovery closed on January 23, 2023. However, the Court granted the Plaintiffs leave to
conduct the remaining deposition of Defendant Levine by June 31, 2023. *See* ECF Nos.
39, 48.

probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club,* Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

Here, both parties moved for summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of

the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (internal citations and quotation marks omitted). "The court must deny both motions if it finds there is a genuine dispute of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Rashid v. Wash. Metro. Area Transit Auth.*, No. DKC 17-0726, 2018 WL 1425978, at *4 (D.Md. Mar. 22, 2018) (citation omitted).

## DISCUSSION

### Defendants' Motion for Summary Judgment

In its Motion, Defendants seek judgment as a matter of law on all counts: (1) failure to pay minimum wage in violation of the MWHL; (2) failure to pay earned wages in violation of the MWPCL; (3) failure to pay minimum wage pursuant to the FLSA; and (4) common law breach of contract for failure to pay wages. ECF No. 37. Defendants assert that in each Count, no genuine issue as to any material fact exists and that they are entitled to judgment as a matter of law. *Id.*

*Count I – Violation of the Maryland Wage and Hour Law*

In the operative complaint, Plaintiffs contend that "Defendants have at material times failed to pay Plaintiff[s'] a proper minimum wage and/or overtime rate, free and clear and in a timely manner." ECF No. 1. Plaintiffs further assert that Defendants required them to work in excess of forty hours per week and "willfully failed to pay [Plaintiffs] an overtime wage of at least one and one-half times the applicable minimum wage for statutory work during [their] employment with Defendants." *Id.* Therefore, Plaintiffs have "the legal right to receive the full minimum wage and overtime wage due as required by Maryland law and applicable Maryland regulations." *Id.*; *see* Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*).

In their Motion for Summary Judgment, Defendants counter that neither Plaintiff Smedley nor Plaintiff Clarke ever worked overtime at Citron and that Citron did not fail to pay minimum wage or sick/vacation pay as required by law. ECF No. 37. In their response brief, Plaintiffs concede that they are not owed any overtime from the Defendants. ECF No. 39. The Court finds, therefore, that no genuine dispute of material fact exists as to whether Defendants failed to pay Plaintiffs proper overtime, and GRANTS Defendants' Motion for Summary Judgment as to the issue of overtime in Count I of Plaintiffs' complaint.

However, Plaintiffs do contest Defendants' assertion that Plaintiffs are not owed any additional compensation, both in the form of unpaid minimum wages and unpaid sick and vacation pay. ECF No. 39. As to the question of owed minimum wages, the court will

later address at length whether a material issue of fact exists regarding Defendants' use of a tip credit to satisfy its FLSA minimum wage requirements. As explained herein, a material issue of fact does exist as to whether Defendants provided proper tip credit notification to Plaintiffs, and therefore whether Defendants properly offset their minimum wage obligations. Therefore, the Court DENIES Defendants' Motion for Summary Judgment as to the issue of unpaid minimum wage in Count 1 of Plaintiffs' complaint.

Further, Defendants assert that neither Plaintiff Smedley or Plaintiff Clarke was entitled to sick/vacation pay, citing the fact that neither of them had an employment contract with Citron. In their Opposition Motion, Plaintiffs include paystub information to support their claim. *See* ECF No. 39-2, 39-12. What appears to be Plaintiff Smedley's final paystub from Citron, dated August 9, 2021, states that he accrued 40 hours of vacation time and 20 hours of sick time and took neither. ECF No. 39-12. In an affidavit, Plaintiff Smedley also states that he "was not paid any of my accrued forty (40.00) hours of sick leave or twenty (20.00) hours of vacation pay for 2021." ECF No. 39-8. What appears to be Plaintiff Clarke's final paystub, dated March 8, 2021, also states that Plaintiff Clarke accrued 40 hours of sick pay which he did not use. ECF No. 39-13. In an affidavit, Plaintiff Clarke states that he "was not paid any of my accrued forty (40) hours of sick leave for 2021." ECF 39-10. Based on the evidence presented to the Court, I find that a genuine issue of material fact exists as to whether the Plaintiffs did not receive owed sick/vacation pay. Therefore, the Court DENIES Defendants' Motion for Summary Judgment as to the issue of unpaid sick/vacation pay in Count 1.

*Count III – Violation of the Fair Labor Standards Act of 1938*

Counts II and III of Plaintiffs' complaint are chiefly concerned with similar factual allegations. The Court will analyze Count III before examining Count II.

The FLSA was enacted to "protect all covered workers from substandard wages and oppressive working hours." *Wai Man Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1031–32 (4th Cir. 2020) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). It is often described as the "minimum wage/maximum hour law," and it currently requires employers to pay a minimum wage of $7.25 per hour. *Id.* at 1032 (citations omitted); 29 U.S.C. § 206(a)(1)(C).

However, exceptions exist for employers who employ "tipped employees"—or those who "customarily and regularly receive[] more than $30 a month in tips." 29 U.S.C. § 203(t). "Tips can satisfy the FLSA's minimum-wage requirement by use of the tip credit." *Wai Man Tom*, 980 F.3d at 1033; 9 C.F.R. § 531.52. However, "[a]n employer *must notify its employees in advance* if it intends to rely on the tip credit provision" to meet its minimum wage obligations.'" *Wai Man Tom*, 980 F.3d at 1033 (quoting 29 U.S.C. § 203(m)(2)(A)) (emphasis added). This includes notifying the employee of four pieces of information: (1) the amount of the cash wage that the employer will pay to the tipped employee; (2) the additional amount by which the tipped employee's wages are increased on account of the tip credit; (3) the fact that all tips received by the tipped employee must be retained by the employee, except for those subject to a valid tip pooling arrangement;

and (4) that the tip credit shall not apply to any employee who has not been informed of above-listed items (1)–(3). *See* 29 C.F.R. § 531.59.

*Claims relating to the "pre-pandemic period"*

There are two separate time intervals at issue with respect to the Defendants' tipping policy: (1) the time period pre-dating the Covid-19 pandemic, up through March 2020, when Citron was forced to temporarily close ("pre-pandemic period") and (2) May 2020 onward, when Citron reopened and imposed a mandatory service charge on all tables ("reopening period"). I will first address the claims arising out of the pre-pandemic period, when only Plaintiff Smedley, and not Plaintiff Clarke, worked at Citron.

Defendants acknowledge that they were required to provide notice to their tipped employees in order to take a tip credit. ECF No. 37. However, Defendants insist that Plaintiff Smedley had sufficient notice, such that no genuine issue of material fact exists, and Defendants are entitled to judgment as a matter of law. *Id.* Defendants highlight that in the pre-pandemic period, Plaintiff Smedley acknowledged receiving an employee handbook that discussed compensation, tip pooling, and the use of a tip credit towards minimum wage requirements, and that he acknowledges attending a training led by Mr. Pertman, where the same was discussed. *Id.*

This Court has previously addressed how an employer must communicate the required information to the employee so that notice exists. *Dorsey v. TGT Consulting, LLC*, 888 F.Supp.2d 670, 682 (D.Md. 2012). In *Dorsey*, servers at Greene Turtle franchises claimed that they had not been notified. 888 F.Supp.2d at 682. The defendants countered

11

that the employees' biweekly earning statements functioned to inform the servers of the tip credit and moved for summary judgment. *Id.* This Court denied the motion, finding that none of the Greene Turtle earnings statements referenced the federal minimum wage. *Id.* Therefore, "the earnings statements could not *alone* have informed employees that their tipped wage was subminimum and that a certain percentage of their tips were being applied to meet federal minimum wage requirements." *Id.* (emphasis in original). The Court also found conflicting evidence as to whether Greene Turtle orally informed its employees of the wage structure:

> The evidence in the record demonstrates a genuine dispute. On the one hand, [the Executive Vice-President] testified that the Greene Turtle trained its managers to inform new hires of the wage structure. On the other, all of the deposed plaintiffs denied that managers did in fact notify them. In addition, former assistant managers . . . testified in their affidavits that they had not been trained to properly inform new hires.

*Id.* at 683.

Therefore, the Court found that plaintiffs' deposition testimony was sufficient to create a genuine dispute as to whether oral notification took place, and the motion for summary judgment was denied. *Id.* at 683.

Our case is analogous to *Dorsey*. In their Motion for Summary Judgment, Defendants contend that Plaintiff Smedley received the Citron Employee Handbook, which would have informed him about the tip credit policy. *See* ECF No. 39-7. The relevant handbook language reads:

> *In compliance with Maryland State labor laws*, Citron will start its rate of pay at the minimum wage rate for non-tipped employees. Non-food service employees shall receive a wage of at least $5.65 per hour, and credit for tips

12

shall not exceed $2.35 per hour, provided that the total of tips received plus the wages equals or exceeds $8.00 per hour. Food service tipped employees shall receive a wage of at least $5.00 per hour and credit for tips shall not exceed $3.00 per hour, provided that the total of tips received plus the wages equals or exceeds $8.00 per hour.

*Id.*

Putting aside the question of whether Plaintiff Smedley actually *did* receive the Citron Employee Handbook, the handbook on its own does not provide sufficient notice. While it references Maryland State labor laws, it does not mention federal minimum wage law. *See id.* at 682; ECF No. 37-9. Therefore, the handbook did not inform Plaintiff Smedley that his hourly wage was under the federal minimum and that his tips were being applied to meet federal minimum wage requirements. *See Dorsey*, 888 F.Supp.2d at 682.

Since the handbook did not properly inform Plaintiff Smedley, Defendants' Motion for Summary Judgment turns on whether Citron orally informed Plaintiff Smedley that it would be taking a tip credit. The evidence in the record shows a genuine dispute. Mr. Pertman, the restaurant consultant, testified at deposition that Plaintiff Smedley attended a new employee training where compensation was discussed. ECF No. 37. However, Mr. Pertman also testified that he could not remember any conversation during training about how a server would receive a lower minimum wage, to be offset by tips. *Id.* Further, in an affidavit, Plaintiff Smedley testified that he "was never told anything about the tip credit or that Citron was taking a tip credit, [or] the exact amount of the tip credit[.]" ECF No. 39-8. Viewed in the light most favorable to the Plaintiffs, Plaintiff Smedley's affidavit is sufficient to create a genuine dispute as to whether oral notification took place. *See*

*Anderson*, 477 U.S. at 242. As a result, Defendants' Motion for Summary Judgment is DENIED as to the Count III claims arising out of the pre-pandemic period.

*Claims relating to the reopening period*

Defendants also contend that they are entitled to summary judgment as to Plaintiffs' "reopening period" claims. When Citron reopened in May 2020 after a Covid-19 closure, Plaintiff Smedley resumed working at the restaurant and Plaintiff Clarke joined the staff. At that time, Citron began imposing a mandatory 20% gratuity on each table's bill. Defendants assert that these mandatory gratuities qualify as "service charges," and not tips. ECF No. 37. Plaintiffs counter that Defendants improperly categorize the mandatory gratuities as service charges. ECF No. 39.

The term service charge is not defined by the FLSA, but FLSA regulations provide that "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip...." 29 C.F.R. § 531.55(a). Instead, such charges are service charges. *Id.*; *Wai Man Tom*, 980 F.3d at 1033. This distinction between a "service charge" and a "tip" has important legal significance. *Prusin v. Canton's Pearls, LLC*, No. JKB-16-0605, 2017 WL 5126156, at *6 (D.Md. Nov. 6, 2017). The full amount of a service charge may be used to offset an employer's minimum wage liability, and the employer does not need to show that it complied with tip credit notice provisions. *Id.* "At least two prerequisites must be satisfied in order to count service charges as an offset to an employer's minimum-wage liability. The service charge (1) must have been included in the establishment's gross receipts, and (2) it must have been

distributed by the employer to its employees." *Id.* (cleaned up) (quoting *McFeeley v. Jackson St. Entm't*, LLC, 825 F.3d 235, 246 (4th Cir. 2016) (citations omitted).

The parties do not agree regarding the above statement of law. *See* ECF Nos. 37, 39. As I construe Defendants' brief, they contend that merely switching from a system where guests voluntarily chose what to tip servers to one where a mandatory gratuity was imposed on guests is enough to shield them from FLSA notice requirements. ECF No. 37. Defendants cite *Compere v. Nusret Miami, LLC*, which rejects the idea that an employer must include mandatory gratuities in gross receipts for tax purposes in order for those sums to count as service charges. 28 F.4th 1180, 1182 (11th Cir. 2022); *see* 29 C.F.R. § 531.55(b). However, *Compere* conflicts with Fourth Circuit decisions. The Fourth Circuit has clearly established that a service charge must be included in an establishment's gross receipts, and it must have been distributed by the employer to the employee. *McFeeley,* 825 F.3d at 246. Absent these prerequisites, an employer cannot count the service charges as an offset to the employer's minimum wage liability. *Id.* "These requirements are necessary to ensure that employees actually received the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so." *Id.*

Plaintiffs contend that disputed material facts exist as to both whether mandatory gratuities were included in gross receipts and whether these mandatory gratuities were fully distributed to Plaintiffs. However, Plaintiffs' assertions are wholly conclusory, and they provide no evidence in the record to support their claim. ECF No. 39. Regardless, "a party seeking summary judgment always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Further, "where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." *Ray Communications, Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294, 300–01 (4th Cir. 2012) (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir.2003)).

By failing to identify and apply the correct law of this jurisdiction, Defendants have failed to meet their initial burden, and their Motion for Summary Judgment as to Plaintiffs' Count III reopening period claims is DENIED.

*Count II – Violation of the Maryland Wage Payment and Collection Law*

In their Motion to Dismiss, Defendants contend that there is no evidence that any earned wages were unpaid and that they are entitled to judgment as a matter of law regarding Plaintiffs' MWPCL claims. Plaintiffs assert that Defendants "failed to inform Plaintiffs of their exact compensation at Citron," in violation of the MWCPL. The MWPCL is codified beginning at § 3-501 of the Labor and Employment Article of the Maryland Code. It states in relevant part that "(a) An employer shall give to each employee: (1) at the time of hiring, *notice* of: (i) the rate of pay of the employee." (emphasis added).

16

As previously noted, Defendants contend that Plaintiff Smedley attended a new employee training where compensation was discussed. ECF No. 37. However, Plaintiff Smedley testified that he was never told such information. ECF No. 39. Further, Mr. Pertman's deposition revealed that he could not remember specific details as to what he discussed at that training session. ECF No. 39-6.

Defendants have not put forth any evidence that Plaintiff Clarke was notified of his pay rate at the time of his hiring. *See* ECF No. 37. To show that Plaintiff Clarke had notice of his rate of pay, Defendants rely solely on the fact that the mandatory gratuity policy was printed on menus. *See* ECF No. 37. Further, in his deposition, Plaintiff Clarke testified that no one had ever told him what he was going to be paid. ECF No. 39-7.

Drawing all reasonable inferences in favor of the nonmoving party, I find that a genuine issue of material fact exists as to whether the Plaintiffs had notice of their rate of pay at the time of their hiring. *See Celotex*, 477 U.S. at 322–23. Defendants Motion for Summary Judgment as to Count II of the Complaint is DENIED.

### *Count IV – Breach of Contract*

In the operative Complaint, Plaintiffs allege that Defendants breached the agreement between the parties by (1) failing to pay all tips collected from working as a server and from catering events, (2) failing to pay a fixed proportion of service charges collected from catering events, and (3) failing to allocate tips as agreed. ECF No. 1. Defendants assert that "neither Plaintiff has identified the existence of a contractual promise to pay them beyond minimum wage," and that they are entitled to judgment as a matter of law.

I find that no genuine issue of material fact exists as to whether an agreement existed much less whether Defendants breached an agreement with Plaintiffs. Plaintiffs have acknowledged that no written employment agreement ever existed between them and Defendants, (ECF Nos. 1, 39) and they have not put forth any evidence of any oral agreement. I find that no "reasonable jury could return a verdict for the nonmoving party" and therefore Defendants' Motion for Summary Judgment is GRANTED as to Count IV of the Complaint. *Anderson*, 477 U.S. at 248.

## Plaintiffs' Cross-Motion for Summary Judgment

*Charles Levine is an Employer as Defined by the FLSA, MWHL, and MWPCL*

Plaintiffs ask the Court to find that Defendant Levine is an employer per the FLSA, MWHL, and MWPCL. In their Opposition to Plaintiffs' Motion for Partial Summary Judgment, Defendants fail to address the issue, but this does not end the Court's analysis. ECF No. 40. As the Fourth Circuit held:

> [F]ailure to respond...does not fulfill the burdens imposed on moving parties by Rule 56. Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)...[T]he moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law."

*Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

The Court must "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."

*Custer*, 12 F.3d at 416.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "It is well settled that an individual may qualify as an employer and face liability under the FLSA." *Roman v. Guapos III, Inc.*, 970 F.Supp.2d 407, 416 (D.Md. 2013). The Supreme Court has held that an individual qualified as an "employer" under the FLSA because the defendant exercised "managerial responsibilities . . . which gave it substantial control of the terms and conditions of the work of the[] employees." *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

The Fourth Circuit has repeatedly held that because the FLSA is remedial in nature, "it should be broadly interpreted and applied to effectuate its goals." *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citing *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir.1999)). However, "[c]ourts generally look at the 'economic reality' of an individual's status in the workplace before determining liability." *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 890 (D.Md. 2011) (citations omitted). "Economic reality" includes factors such as "the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Gionfriddo*, 769 F.Supp.2d at 890 (citing *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir.1998)).

Defendant Levine testified during deposition that he is the 90% owner of Citron, and that he "[c]reated it from the ground up." ECF No. 37-1. He controlled the operations of the business, evidenced, for example, by his testimony that he would not need anyone's corporate authority to open a new bank account on behalf of the business. ECF No. 37-1. Mr. Pertman's testimony confirms that Defendant Levine exercised a high level of

managerial control over all aspects of the business. In his deposition, Mr. Pertman testified that "[a]s operational consultant, I helped him write his manuals, I helped him train his staff, hire his staff, helped design some of the kitchen." ECF No. 39-6. I find that Defendant Levine is an employer for purposes of the FLSA.

Plaintiffs also contend that Defendant Levine is an employer under the MWHL and MWPCL, the two Maryland statutes which allow employees to recover wages withheld unlawfully from them by their employers. *Cunningham v. Feinberg*, 441 Md. 310, 322 (2015). "The MWHL provides a minimum wage standard, and the MWPCL 'sets certain standards for the frequency and methods of compensation, permissible deductions from pay, and notification of employees about the details of pay and changes in the amount or method of payment.'" *Id.* at 322–23 (internal citations omitted) (quoting *Ocean City, Md., Chamber of Commerce, Inc. v. Barufaldi*, 434 Md. 381, 385 (2013)).

The MWHL is the "State parallel" of the FLSA. *Newell v. Runnels*, 407 Md. 578, 649 (Md. 2009). Like the FLSA, the MWHL's statutory definition of "employer" is to be given "an expansive interpretation in order to effectuate the [statute's] broad remedial purposes." *See id.* at 650 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.1983). Determining an individual's employer for the purposes of the MWHL also "turns on the 'economic realities' of the relationship between the employee and the alleged employer." *Id.* The Appellate Court of Maryland has extended the economic reality test applied to employer determinations under the MWHL to the employer determinations under the MWPCL because of the statutes' similarities. *Campusano v. Lusitano Const. LLC*, 208 Md.App. 29, 38 (2012); *see also Pinnacle Group, LLC v. Kelly*,

235 Md.App. 436, 472–73 (2018). Because there are no genuine disputes of material fact as to whether Defendant Levine is an employer under the economic reality test for the purposes of the FLSA, I find the same to be true for the MWHL and MWPCL.

Plaintiffs' Partial Motion for Summary Judgment is therefore GRANTED as to whether Defendant Levine is an employer as defined by the FLSA, MWHL, and MWPCL.

### *Plaintiff Smedley's Entitlement to a Partial Judgment*

Plaintiff Smedley also asks the Court to award him judgment in the amount of $21,359.18. He asserts that Defendants have violated the FLSA and are liable to him in the amount of his unpaid minimum wages and liquidated damages. ECF No. 39. Defendants contend that Plaintiff Smedley is not entitled to damages because no statutes were violated. ECF No. 40. The Court finds that the issue of damages is premature. As previously analyzed, there remain genuine disputes of material facts as to whether Defendants violated the statutory provisions that would entitle Plaintiff Smedley to relief. Accordingly, Plaintiff's request for an award of $21,359.18 is DENIED.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that there are no genuine disputes of material fact regarding Plaintiffs' Count I MWHL claim as to unpaid overtime wages and Count IV common law breach of contract claim. There are genuine disputes of material fact as to Plaintiffs' Count I minimum wage and unpaid sick/vacation time claims. There are also genuine disputes of material fact regarding

Plaintiffs' Count II MWPCL and Count III FLSA claim. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 37) is GRANTED in part and DENIED in part.

The Court also finds also that there are no genuine disputes of material fact regarding Defendant Levine's status as an employer for the purposes of the FLSA, MWHL, and MWPCL. The Court finds that there are genuine disputes of material fact as to whether Plaintiff Smedley is entitled to judgment in the amount of $21,359.18. Thus, Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 39) is GRANTED in part and DENIED in part. A separate Order will follow.

Date: 18 September 2023

A. David Copperthite
United States Magistrate Judge